FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
1:20 pm, Aug 19, 2013
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JAMES C.K. FONTANILLA,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF HAWAII, ET AL.,<br><br>Defendants. | ) | Civ. No. 12-00641 BMK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT KRAIG MASSEY'S, IN HIS INDIVIDUAL CAPACITY, MOTION FOR SUMMARY JUDGMENT |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT KRAIG MASSEY'S, IN HIS INDIVIDUAL CAPACITY, MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Kraig Massey's, In His Individual Capacity, Motion for Summary Judgment (Doc. 39). Defendant State of Hawaii and Kraig Massey, in his official capacity, join in the Motion (Doc. 44.) The Court heard this Motion on August 12, 2013. After careful consideration of the Motion, the supporting and opposing memoranda, and the arguments of counsel, the Court GRANTS IN PART and DENIES IN PART Massey's Motion. Specifically, all claims survive summary judgment, except Plaintiff James Fontanilla's state law negligence claims in Count I and IV and his claim for punitive damages in Count VI.

FACTUAL BACKGROUND

This action arises out of a high speed car chase that resulted in the shooting of Fontanilla by Massey, a deputy sheriff. Fontanilla survived the shooting. Aside from these facts, the parties present substantially different versions of what happened on the morning of February 19, 2011. Conflicting eyewitness testimony is also included in the record.

According to Fontanilla, he had been operating a stolen car when he realized that Massey was following him. (Fontanilla Decl'n ¶¶ 2-3.) He tried to get away from Massey by driving onto the freeway and eventually exiting at the Kunia exit. (Id. ¶ 3.) While still on the exit, he got out of the car, hoping to flee on foot. (Id.) He ran up an embankment and when he was unable to climb over a fence, he ran west to get away. (Id.) While running away, Massey shot him in the back from behind. (Id.) He fell to the ground, then Massey pulled his arm in a hurtful manner. (Id. ¶ 9.) Fontanilla begged Massey to turn him over to relieve the pain, but he could not breathe and eventually blacked out. (Id.) According to Fontanilla, there was no physical contact with Massey prior to the shooting, and he did not try to grab Massey's gun or knife, nor did he pull a knife on Massey or try to wrestle, attack, or punch Massey. (Id. ¶ 5-9.)

According to Massey, he followed Fontanilla to the Kunia exit, where Fontanilla ran up a grassy embankment on the side of the freeway. (Massey Decl'n ¶¶ 13-15.) Massey ran after him and caught up to Fontanilla as he was trying to climb over a fence. (Id. ¶ 15.) Massey says a struggle ensued, where Fontanilla tried to grab Massey's holstered firearm, but grabbed Massey's knife instead. (Id. ¶¶ 15-16.) Fontanilla ran away again, then turned around and pointed the knife at Massey. (Id. ¶ 16.) Massey drew his firearm and ordered Fontanilla to stop. (Id.) Fontanilla continued to brandish the knife at Massey before running away, then stopped and turned around, lunging at Massey with the knife. (Id. ¶¶ 17-18.) Massey discharged his weapon and shot Fontanilla "in order to protect myself." (Id. ¶ 18.) Fontanilla ran away again, but Massey caught up to him and struggled with Fontanilla until he was able to subdue him. (Id. ¶¶ 19-20.)

On October 25, 2012, Fontanilla filed this action against Massey and the State of Hawaii. Fontanilla asserted the following claims: negligently and/or intentionally shooting Fontanilla and respondeat superior (Count I); violating state policies and using excessive force in violation of 42 U.S.C. § 1983 (Count II); false claims and lying (Count III); negligent infliction of emotional distress (Count IV); intentional infliction of emotional distress (Count V); and punitive damages (Count

VI). Massey now moves, in his individual capacity, for summary judgment on all claims against him.

DISCUSSION

I. Summary Judgment Standard

Massey argues that, instead of viewing the facts in the light most favorable to the nonmoving party, the Court should view the facts according to Massey. Massey cites to Scott v. Harris, 550 U.S. 372 (2007) for support.

In Scott, the United States Supreme Court acknowledged that, typically, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party." Id. at 380. However, the Court stated: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." Id. (emphasis added). In other words, where the nonmoving party's "version of events is so utterly discredited by the record that no reasonable jury could [believe] him," the Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. Id. (emphasis added).

In Scott, the parties' versions of events surrounding a high speed car chase differed substantially. Id. at 378. According to the plaintiff, he drove

carefully and was a "cautious and controlled driver." Id. at 380. However, the record contained a videotape that captured the events of the car chase and told "quite a different story," which "more closely resemble[d] a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." Id. at 379-80. The Supreme Court concluded that the videotape "clearly contradict[ed]" and "utterly discredited" the plaintiff's version of events such that "no reasonable jury could have believed him." Id. at 378, 380. In other words, the plaintiff's version of events was "blatantly contradicted" by objective evidence in the record. Id. at 380. Consequently, the Supreme Court held that the lower courts "should have viewed the facts in the light depicted by the videotape" and not in the light most favorable to the plaintiff. Id. at 380-81.

In the present case, Fontanilla and Massey have substantially different accounts of what happened on the side of the freeway and the moments leading up to Massey shooting Fontanilla. According to Fontanilla, he got out of the car he was driving, tried to flee on foot, and was shot in the back while running away. (Fontanilla Decl'n ¶ 3.) He says he did not try to obtain Massey's gun or knife and did not even see a knife at the scene. (Id. ¶ 6.) Fontanilla says he did not fight with Massey and that the "only thing that could be described as 'wrestling' or

'fighting' occurred after [he] was apprehended by Massey and pinned on the ground." (Id. ¶ 5.)

According to Massey, he caught up to Fontanilla as he tried to run away and a struggle ensued where Fontanilla tried to grab Massey's gun but instead grabbed his knife. (Massey Decl'n ¶¶ 15-16.) After running away again, Fontanilla turned around, pointed the knife at Massey, and lunged at him with the knife. (Id. ¶¶ 17-18.) While this was happening, Massey drew his gun, ordered Fontanilla to stop, then shot at Fontanilla. (Id. ¶¶ 16-18.) Fontanilla ran away again and when Massey caught up to him, Massey grabbed him from behind, struck Fontanilla with his fists, and threw him to the ground to subdue him. (Id. ¶¶ 19-20.)

Unlike in Scott, there is no videotape or other uncontested or incontrovertible evidence of the events that happened during the moments leading up to Massey shooting Fontanilla. Massey points to the testimony of three eyewitnesses, as well as Fontanilla's broken sunglasses and photographs of his injuries, to argue that Fontanilla's factual contentions are "completely discredit[ed]." (Opp. at 13.) The Court disagrees.

Each of the eyewitnesses provides different versions of the events. Calvin Naipo, III, testified that he was distracted by traffic during the moments

leading up to the shooting.  (Naipo Depo. at 32, 36.)  While Naipo was looking away, he heard a shot and then saw Massey handcuffing Fontanilla.  (Id. at 32.)  He could not tell if Fontanilla had a weapon and he did not see Massey shoot Fontanilla.  (Id. at 32, 38.)  The only "physical contact" he observed was Fontanilla "swip[ing] at the sheriff."  (Id. at 29-30, 53.)  George Kawaauahu testified that he could not remember whether Massey unholstered his gun or whether Massey physically touched Fontanilla.  (Kawaauahu Depo at 12-13.)  Steven Casuga testified that he observed Fontanilla and Massey "wrestling."  (Casuga Depo at 9.)  These eyewitnesses and that fact that Massey's sunglasses were broken and that he suffered injuries do not "clearly contradict" or "utterly discredit" Fontanilla's version of events.  Scott, 550 U.S. at 378, 380.  Massey points to no objective and undisputed evidence that "blatantly contradict[s]" Fontanilla's facts such that "no reasonable jury could believe it."  Id. at 380.

    Indeed, there exist factual disputes between the parties regarding material issues of fact – i.e., what occurred in the moments leading up to Massey shooting Fontanilla.  This is the "usual case where each side describes the incident differently."  Jimenez v. Sambrano, Civ. No. 04cv1833-L(PCL), 2008 WL 538441, at *4 (S.D. Cal. Feb. 26, 2008).  Whether a jury will believe Fontanilla or Massey is a question of witness credibility.  Id.  "Determinations regarding credibility, the

weighing of evidence, and the drawing of legitimate inferences are jury functions and are not appropriate for resolution by the court on a summary judgment motion." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Accordingly, the Court declines to apply the standard announced in Scott v. Harris and instead views the facts in the light most favorable to Fontanilla, the nonmoving party. 550 U.S. at 380.

II. Count III for False Statements

In Count III, Fontanilla alleges that Massey "concocted a false claim that [Fontanilla] had physical contact with Massey and had pulled a knife out of Massey's pocket, opened the knife, and threatened Massey with it." (Complaint ¶ 25.) Massey seeks summary judgment on this claim, arguing that "no rational jury would find that Deputy Massey lied about what happened in the incident giving rise to this action once the eyewitness testimony and the photographs of the Plaintiff's injuries and damaged personal property are examined." (Motion at 21.) As discussed above, this Court views the facts in the light most favorable to Fontanilla, which includes Fontanilla's declaration that he had no physical contact with Massey prior to being shot and that he did not grab Massey's knife or use a knife against him. (Fontanilla Decl'n ¶¶ 4-8.) Those facts support Fontanilla's claim in Count III and negate Massey's argument for judgment in his favor as to


this claim.  See Fed. R. Civ. P. 56(c) (the party moving for summary judgment must show "that the moving party is entitled to judgment as a matter of law").

III.     Qualified Immunity and Excessive Force

Massey argues that he is entitled to qualified immunity and that the law on excessive force supports summary judgment in his favor.  (Motion at 13-18.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"  Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011) (en banc).

In determining whether an officer is entitled to qualified immunity, this Court employs a two-step test:  "first we decide whether the officer violated a plaintiff's constitutional right; if the answer to that inquiry is 'yes,' we proceed to

determine whether the constitutional right was ‘clearly established in light of the specific context of the case’ at the time of the events in question.” Id.

With respect to the first prong of the test, this Court must determine whether Massey violated Fontanilla’s Fourth Amendment rights. The Supreme Court “has emphasized that there are no per se rules in the Fourth Amendment excessive force context; rather, courts must still slosh [their] way through the factbound morass of ‘reasonableness.’ Whether or not [a defendant’s] actions constituted application of ‘deadly force,’ all that matters is whether [the defendant’s] actions were reasonable.” Id. at 433 (quoting Scott, 550 U.S. at 383). Importantly, the “‘most important’ . . . factor is whether the suspect posed an ‘immediate threat to the safety of the officers or others.’” Id. at 441. In determining whether there was an immediate threat, a “simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern.” Id. at 441-42.

Massey agrees that “[t]here is no dispute that [his] action constituted an intrusion on Mr. Fontanilla’s Fourth Amendment interests.” (Motion at 14.) However, Massey argues that “shooting the Plaintiff was reasonable as necessary to effect Plaintiff’s arrest and protect himself from serious bodily harm.” (Id.

at 16.) Massey asks the Court to view the facts as Massey presents them, but as discussed above, the Court views the facts in the light most favorable to Fontanilla.

Viewing the facts from Fontanilla's perspective, Massey chased him on the freeway until Fontanilla jumped out of the car to flee on foot. (Fontanilla Decl'n ¶ 3.) He tried unsuccessfully to jump over a fence, but decided to run away. (Id.) While running away, Fontanilla "was shot in the back from behind." (Id.) Fontanilla says he had no weapon on him and did not try to wrestle or attack Massey. (Id. ¶ 5.) In light of these facts, Fontanilla posed no "immediate threat to the safety of the officers or others," as he was simply running away from Massey unarmed. Mattos, 661 F.3d at 441. Therefore, a reasonable fact-finder could conclude, taking the evidence in the light most favorable to Fontanilla, that Massey's application of deadly force was unreasonable and therefore constitutionally excessive. See Mattos, 661 F.3d at 446.

Turning to the second prong of the qualified immunity test, this Court must consider "whether the constitutional right was 'clearly established in light of the specific context of the case at the time of the events in question." Mattos, 661 F.3d at 440. At the time Fontanilla was shot, "it was recognized that an officer could use deadly force to effect the arrest of a fleeing felon if, under the circumstances, he reasonably believed such force was necessary to protect himself

or others from death or serious harm." Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991). As discussed above, taking the facts in the light most favorable to Fontanilla, he posed no threat to Massey or anyone else, as he was simply fleeing by foot on the side of the freeway, unarmed. Thus, it was clearly established that shooting Fontanilla in the back when he posed no threat to Massey or the public violated Fontanilla's Fourth Amendment rights. Id. ("Under Taylor's version of the shooting, the police officers could not reasonably have believed the use of deadly force was lawful because Curnow did not point the gun at the officers and apparently was not facing them when they shot him. . . . [T]he [officers] are not entitled to qualified immunity.").

Although this Court concludes above that, taking the facts in the light most favorable to Fontanilla, the two prongs of the qualified immunity test are satisfied such that Massey is not entitled to qualified immunity, Massey nevertheless argues that he "could have believed reasonably but mistakenly that his conduct did not violate a clearly established constitutional right." (Motion at 22.) Massey points to Hawaii Revised Statutes sections 703-307 and 803-7, which allow officers to use force "to compel the person to submission" and "to effect a lawful arrest." Haw. Rev. Stat. §§ 703-307, 803-7. However, according to Massey's sworn declaration, he shot Fontanilla – not to compel his submission or

to effect an arrest – but "in order to protect myself." (Massey Decl'n ¶ 18.) Because Massey shot Fontanilla to protect himself, his use of force is not justified by the Hawaii Revised Statutes §§ 703-307, 803-7. Accordingly, the Court concludes that Massey is not entitled to qualified immunity. Mattos, 661 F.3d at 440.

IV. State Law Negligence Claims

Massey contends that he is entitled to summary judgment on the state law negligence claims in Count I (negligently shooting Fontanilla) and Count IV (negligent infliction of emotional distress). (Motion at 18-20.) Massey argues that he is entitled to qualified or conditional privilege under Hawaii law. (Id.)

"Hawaii state law provides that nonjudicial governmental officials enjoy a 'qualified or conditional privilege' when performing their official duties." Bartolome v. Kashimoto, Civ. No. 06-176 BMK, 2009 WL 1956278, at *1 (June 26, 2009). Law enforcement officers "are nonjudicial government officials who are eligible for the qualified or conditional privilege." Id. The Hawaii Supreme Court has held that this qualified privilege "allow[s] the action to proceed but [ ] limit[s] liability to only the most guilty of officials by holding plaintiff[s] to a higher standard of proof than in normal tort cases." Medeiros v. Kondo, 522 P.2d 1269, 1272 (Haw. 1974). "Thus, to overcome this qualified privilege, a

plaintiff must prove by clear and convincing evidence that an official was 'motivated by malice and not by an otherwise proper purpose.'" Bartolome, 2009 WL 1956278, at *1.  In order to overcome a nonjudicial official's qualified privilege, there must be "a showing that the official was 'motivated by ill will or an intention to commit, or a reckless disregard of committing, a wrongful act.'" Id. at *2.

Like in this case, the plaintiff's claims in Bartolome were for negligence and negligent infliction of emotional distress.  Id.  In Bartolome, this Court held that a showing of "ill will or an intention to commit" is "incompatible with a claim based on negligence." Id.  This Court stated: "The level of intent required to demonstrate malice removes the alleged injurious action from the realm of negligence into that of intentionally tortious conduct." Id.  Thus, this Court held that "a non-judicial official's qualified privilege provides complete immunity from negligence claims." Id.  Accordingly, Massey is entitled to qualified privilege – and therefore summary judgment – as to the state law negligence claims in Count I and IV.

V.        Count VI for Punitive Damages

In Count VI as well as in the Prayer for Relief, Fontanilla seeks punitive damages.  Although punitive damages may be sought as relief in this case,

it is not an independent cause of action. Otani v. City & County of Haw., 126 F. Supp. 2d 1299, 1309 (D. Haw. 1998); see also Mullaney v. Hilton Hotels Corp., 634 F. Supp. 2d 1130, 1152 (D. Haw. 2009) ("A claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action."). Therefore, summary judgment is proper on Fontanilla's claim for punitive damages. Otani, 126 F. Supp. 2d at 1309 (noting that punitive damages is not an independent cause of action and granting summary judgment on the plaintiff's claim for punitive damages); Mullaney, 634 F. Supp. 2d at 1153 (granting summary judgment on a claim for punitive damages). However, in granting summary judgment on this claim, the Court is not denying Fontanilla's ability to seek punitive damages as a remedy in this case.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Massey's Motion for Summary Judgment (Doc. 39). All of Fontanilla's claims survive summary judgment, except for the state law negligence claims in Count I and IV and the claim for punitive damages in Count VI.

Fontanilla v. State of Hawaii, et al., Civ. No. 12-00641 BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT KRAIG MASSEY'S, IN HIS INDIVIDUAL CAPACITY, MOTION FOR SUMMARY JUDGMENT.

15

DATED: Honolulu, Hawaii, August 19, 2013.

IT IS SO ORDERED.



   /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Fontanilla v. State of Hawaii, et al., Civ. No. 12-00641 BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT KRAIG MASSEY'S, IN HIS INDIVIDUAL CAPACITY, MOTION FOR SUMMARY JUDGMENT.